# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DEBORAH PATTON, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1847 |
| | § | |
| ECARDIO DIAGNOSTICS LLC, | § | |
|    Defendant. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 37] filed by Defendant eCardio Diagnostics LLC ("eCardio"), to which Plaintiff Deborah Patton filed a Response [Doc. # 40], and Defendant filed a Reply [Doc. # 41].  Having reviewed the full record and having considered relevant legal authorities, the Court **denies** Defendant's Motion.

## I. FACTUAL BACKGROUND

Plaintiff began working for Defendant in August 2008 as a staff accountant. In the early morning of Thursday, December 17, 2009, Plaintiff was advised that her daughter, Brittany Patton, had been seriously injured in a motor vehicle accident in which the driver of the vehicle was killed.  Brittany had two broken femurs, a small hole in her lung, and a small hole in her bladder.

Plaintiff's husband contacted Sherry Hill, Plaintiff's supervisor at eCardio, and informed her of the accident and that Plaintiff was on her way to the hospital. Brittany underwent surgery on her legs that same day and was placed in the Intensive Care Unit at the hospital.

At 2:29 p.m. on Thursday, December 17, 2009, Hill sent an email to Angela Hawkins offering her a full-time position in the accounting department at eCardio. At 8:37 p.m. that evening, Hawkins responded to Hill that she was "very interested."

Plaintiff telephoned Hill again on Friday, December 18, 2009. At that time, Hill advised that Plaintiff had been placed "on FMLA."

On Friday, December 18, 2009, Melanie Arnett, eCardio's Director of Human Resources, invited Hawkins to come in for an interview.

Brittany was released from the hospital on Monday, December 21, 2009. She was confined to a wheelchair.

On Monday, December 21, 2009, Hawkins interviewed with Hill for the full-time accounting position with eCardio.

Plaintiff again telephoned Hill on Tuesday, December 22, 2009. Plaintiff advised that she was taking Brittany to the funeral of Brittany's friend who was killed in the accident.

On Tuesday, December 22, 2009, Hawkins accepted the job with eCardio.

Plaintiff returned to work at eCardio on Wednesday, December 23, 2009. During Plaintiff's time off from work following Brittany's injury, eCardio provided "Great Plains" training for its accounting employees to learn to use a new accounting software program. Plaintiff asked to self-train on the new program, but her request was denied.

When Plaintiff arrived at work on January 8, 2010, she was discharged. Hill told Plaintiff that her employment was being terminated because her skill level was inadequate and that accounts payable was no longer a full time position. Hawkins came to work at eCardio as Plaintiff's replacement.

Plaintiff filed this lawsuit alleging that her termination was in retaliation for her having taken leave under the Family Medical Leave Act ("FMLA"). After an adequate time to complete discovery, Defendant moved for summary judgment. The Motion has been fully briefed and is ripe for decision.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there is no evidence to support

the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Hines v. Henson*, 293 F. App'x. 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Nat'l Union*, 532 F.3d at 401.

### III.   FMLA COVERAGE

Defendant argues that Plaintiff did not qualify for FMLA leave because Brittany was eighteen (18) years old at the time of her injury and did not suffer from a physical disability that rendered her unable to care for herself. The FMLA entitles an eligible employee to a total of twelve (12) weeks of unpaid leave "to care for" the employee's daughter, "if the . . . daughter . . . has a serious health condition."[1] 29 U.S.C. § 2612(a)(1); *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008).

#### A.   "To Care For" Requirement

---

[1] Under the FMLA, a "serious health condition" is defined to include an injury that requires "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). In this case, Brittany's injuries required four days of hospitalization, multiple surgeries, months of physical therapy, and continuing medical treatment for her legs because they are not healing properly. Defendant does not dispute that Brittany had a serious health condition during the relevant period Plaintiff was absent from work.

Plaintiff has presented evidence that she was absent from work in December 2009 "to care for" her daughter. Specifically, Plaintiff has presented evidence that, while Brittany was in the hospital, she helped Brittany use the bed pan and gave her sponge baths. Although it is undisputed that hospital personnel also were caring for Brittany's medical needs while she was in the hospital, the FMLA permits an employee to take leave even when sharing responsibility for the injured person's care. *See* 29 C.F.R. § 825.116; *Bagley v. Regis Corp.*, 2004 WL 2826810, \*5 (N.D. Tex. Dec. 7, 2004) (Lynn, J.). Additionally, an employee is caring for a sick or injured family member when providing emotional support. *Id.*

Plaintiff has presented evidence that, after Brittany came home from the hospital, she helped her get into the car and drove her to the friend's funeral. Plaintiff has presented evidence also that she cared for Brittany by washing her hair, helping her bathe, helping her get up from the bed, and bringing her meals.

Plaintiff's evidence at a minimum raises a genuine issue of material fact regarding whether she was absent from work to "care for" Brittany during and immediately after her hospitalization.

### B. DAUGHTER

The FMLA defines a daughter as a child who is under the age of 18 or is "18 years of age or older and incapable of self-care because of a mental or physical

disability." 29 U.S.C. § 2611(12). It is undisputed that Brittany was over the age of 18 at the time of her injury. As a result, Plaintiff is required to present evidence that raises a genuine issue of material fact regarding whether, at the time Plaintiff took leave, Brittany (1) was incapable of self-care (2) because of a mental or physical disability.

***Incapable of Self-Care*** – Initially, the Court rejects Defendant's argument that Brittany does not satisfy the FMLA definition of "daughter" because she was not incapable of self-care ***before*** the accident on December 17, 2009. Defendant cites no legal authority to support its argument. Indeed, the "condition plaintiff's daughter was in prior to the [accident and] surgery is irrelevant as to whether she was temporarily disabled after the surgery." *See Smallcomb v. Geisinger Sys. Servs.*, 2010 WL 1253482, *3 (M.D. Pa. Mar. 24, 2010); *see also Navarro v. Pfizer Corp.*, 261 F.3d 90, 96 (1st Cir. 2001) (holding that "the crucial moment for determining if a particular condition qualifies as a disability for FMLA purposes is the time that leave is requested or taken"). Consequently, the Court will evaluate whether Brittany satisfies the FMLA's definition of "daughter" for the period December 17-22, 2009.

Plaintiff has presented overwhelming evidence that from December 17-22, 2009, Brittany was incapable of caring for herself. Under the FMLA, an individual is incapable of caring for herself if she "requires active assistance or supervision" in

three or more of the listed activities. 28 C.F.R. § 825.113(c)(2); *Bagley*, 2004 WL 2826810 at *6. Plaintiff has presented evidence that Brittany required assistance with the listed activities of grooming and hygiene, bathing, dressing, and eating. Although Brittany did not even attempt other activities, such as cleaning, shopping, and using public transportation, it is clear that her two broken femurs would have prevented her from doing so without assistance.

***Because of Physical Disability*** – Defendant's primary focus is whether Brittany's inability to care for herself from December 17-22, 2009, was "because of a physical disability." For FMLA purposes, a physical disability is a physical "impairment that substantially limits one or more of the major life activities of an individual" as these terms are defined by the Americans With Disabilities Act ("ADA"). 29 C.F.R. § 825.113(c)(2). The inquiry focuses on whether (1) there is a physical impairment that (2) substantially limits a major life activity. *See Navarro*, 261 F.3d at 96.

Plaintiff has presented uncontradicted evidence that, during the December 17-22, 2009 time period, Brittany had a physical impairment in that she had two broken femurs and could not walk.

Defendant argues that the broken femurs did not "substantially limit" Brittany's major life activity of walking[2] because she was unable to walk for only a few months. Defendant relies on Fifth Circuit legal authority holding that "temporary, non-chronic impairments generally do not constitute disabilities." *See* Motion, p. 6 (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997); *Roger v. Int'l Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996); *Haralson v. Campuzano*, 356 F. App'x 692 (5th Cir. Dec. 15, 2009)). Each of the cases relied upon by Defendant, however, involved the ADA as it existed prior to the amendments ("ADAAA") in 2008, which became effective January 1, 2009.

"The ADAAA rejected what Congress perceived to be the Supreme Court's unduly restrictive approach to analyzing whether [an individual] suffered from a 'disability' for purposes of the ADA." *Cook v. Equilon Enters., L.L.C.*, 2010 WL 4367004, *6 (S.D. Tex. Oct. 26, 2010) (Ellison, J.); *see also Norton v. Assisted Living Concepts, Inc.*, __ F. Supp. 2d __, 2011 WL 1832952, *7 (E.D. Tex. May 13, 2011) (noting that the ADAAA expanded the ADA's definition of the term 'disability'). Under the ADAAA, the Court is required to construe the term 'disability' broadly and to provide coverage to the maximum extent possible under the ADA. *See Cook*, 2010

---

[2] Walking is a "major life activity" for purposes of the ADA and, consequently, for purposes of the FMLA. *See* 29 C.F.R. § 1630.2.

WL 4367004 at *6; *see also Norton*, 2011 WL 1832952 at *7-*8 (citing 42 U.S.C. § 12102(4)(A) & (B)). "Congress' stated purpose in expanding the definition of disability was to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* at *7.

The ADAAA's expanded definition of "disability" gives greater weight to the First Circuit's decision in *Navarro*. In that case, the First Circuit held that "the duration of an impairment is one of several factors that should be considered in determining the existence of a disability under the FMLA." *Navarro*, 261 F.3d at 103. The First Circuit held further that "Congress did not intend that the impairment always be shown to be long-lasting." *Id.* Federal courts in Texas have applied the ADAAA's broader definition of "disability" to include impairments that either are not of long duration or are "episodic or in remission." *See Meinelt v. P.F. Chang's China Bistro, Inc.*, __ F. Supp. 2d __, 2011 WL 2118709 (S.D. Tex. May 26, 2011) (Rosenthal, J.) (denying summary judgment where the plaintiff had an operable brain tumor); *Norton*, 2011 WL 1832952 (denying summary judgment where the plaintiff had renal cancer that was in remission).

Plaintiff in this case has presented evidence that, during the December 17-22, 2009 time period, Brittany was substantially limited in her major life activity of walking. The impairment was severe – she suffered two broken femurs. She could

not walk unassisted and needed to use a wheelchair for several weeks, if not months, after which she could walk only with a walker. At this time, approximately a year and a half later, Brittany continues to experience pain and walks with a limp. Plaintiff's evidence, construed in the light most favorable to her, raises a genuine issue of material fact regarding whether Brittany's condition from December 17, 2009 through December 22, 2009, satisfies the ADAAA's definition of "physical disability" for purposes of Plaintiff's FMLA claim.

Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether she was entitled to FMLA leave between December 17, 2009, and December 22, 2009. Defendant, therefore, is not entitled to summary judgment on this issue.

### IV. DEFENDANT'S EXPLANATION FOR TERMINATION DECISION

Defendant argues also that it had a legitimate, non-retaliatory reason for terminating Plaintiff's employment. Specifically, Defendant asserts that it made the decision to fire Plaintiff in November 2009, prior to Brittany's accident. Defendant also asserts that it decided to terminate Plaintiff's employment based on her inadequate performance. Because Defendant has articulated a legitimate, non-retaliatory reason for its decision to terminate Plaintiff's employment, the burden shifts to Plaintiff to present evidence that raises a genuine issue of material fact

regarding whether Defendant's articulated reason is actually a pretext for retaliation. *Mauder v. Metro. Transit Auth.*, 445 F.3d 574, 583 (5th Cir. 2006).

Defendant has no documentary evidence to show that it decided in November 2009 to terminate Plaintiff's employment. Plaintiff has presented evidence that Hill first contacted Hawkins, who previously worked in eCardio's accounting department on a temporary basis, on December 17, 2009 – the date of Brittany's accident – to inquire whether she was interested in a full-time position in the accounting department. Moreover, it is undisputed that eCardio had scheduled Plaintiff for intense, multi-day training on the new accounting software program in late December 2009, raising an inference that as of December 17, 2009, there had been no decision to terminate Plaintiff's employment. Plaintiff has presented evidence that raises a genuine issue of material fact regarding when eCardio made its decision to terminate Plaintiff's employment.

Similarly, Defendant has no documentary evidence that anyone at eCardio expressed dissatisfaction with Plaintiff's performance before she was terminated in January 2010. The termination document signed by Arnett on January 15, 2010, does not identify any reason for Plaintiff's termination. Plaintiff has presented evidence that there had been no complaints about her performance. She had received no disciplinary actions, admonishments, or write-ups of any kind. Plaintiff has presented

evidence that she had no difficulties performing the requirements of her accounting position with eCardio. Indeed, Plaintiff has relevant accounting experience beginning in 1995. Plaintiff has also presented evidence that the document Hill created to memorialize the basis for Plaintiff's termination was not created until May 14, 2010, after eCardio had been served with Plaintiff's Original Petition on April 29, 2010.

Plaintiff has presented evidence that raises a genuine issue of material fact regarding when and why eCardio decided to terminate her employment. As a result, summary judgment is not appropriate.

## V.     CONCLUSION AND ORDER

Plaintiff has presented evidence to raise a genuine issue of material fact regarding her entitlement to FMLA leave and regarding the reason Defendant decided to terminate Plaintiff's employment. As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 37] is **DENIED**. The parties are reminded that they are required to participate in good faith mediation prior to Docket Call on July 18, 2011.

SIGNED at Houston, Texas this 9th day of **June, 2011**.

_____
Nancy F. Atlas
United States District Judge